OPINION OF THE COURT
Norman L. Harvey, J.
This is an article 78 proceeding originally commenced by a show cause order issued by this court in which the Town of Champlain was the sole respondent. A second order was issued to provide the additional respondents an opportunity to be heard.
Petitioner is a paving contractor having a principal place of business in Clinton County, the county in which the Town of Champlain is located. Tracy-Trombley Construction Co., Inc., and Robert L. Haite are also contractors doing business in Clinton County. The dispute arises out of bidding by the three contractors pursuant to an advertisement for bids issued by the Town of Champlain for certain highway construction. At the adjourned hearing date, all parties stipulated that the facts alleged in the petition are true. The only additional evidence was the "bid document” admitted as petitioner’s Exhibit 1.
In October, 1977, the Town of Champlain, through its engineers, published a document entitled "Advertisement, Information for Bidders, Proposal, Contract Documents, General Conditions and Specifications for Transportation Improvements McCrea Road, Rapids Road, Leggett Road, October 1977”. This "bid document” is comparable to most bid documents in its composition and form.
Bids were invited for the construction of certain highways described in the advertisement in accordance with specifications and general conditions. Although the ultimate contract was to be only between the Town of Champlain and the *322 successful bidder, an examination of the bid document made it apparent that the construction was being funded by the Economic Development Administration of the United States Department of Commerce. Pertinent parts of the general conditions, relevant to the controversy, are contained in paragraph 61. They are: "The contractor agrees to expend at least 10 percent of the contract, if awarded, for bona fide minority business enterprises. For purposes of this paragraph the term 'minority business enterprise’ means a business at least 50 percent of which is owned by minority group members or, in case of a publicly owned business, at least 51 percent of the stock of which is owned by minority group members. For purposes of the preceding sentence 'minority group members’ are citizens of the United States who are Negroes, Spanish-speaking, Orientals, Indians, Eskimos, and Aleuts. * * * The contractor further agrees to cooperate with the Owner in furnishing the Economic Development Administration with reports on minority business enterprise utilization after award and at 40 percent completion of the project.” (Emphasis added.)
Unit 3 of the bid document consisted of eight pages entitled "Proposal and Bids”. On page 3-PB-4, following a blank space for the bidder to state the total amount of his bid and a paragraph containing some advice to the bidder and a reservation of certain rights to the owner, was the following paragraph: "Within 5 days after the bid opening and after the apparent lowest responsive bidder is notified, said bidder must submit to the Town of Champlain the names of each minority business enterprise said bidder will use, the work to be performed by it, and the amount of contract funds to be paid to it, on form ed-530, said form to be supplied by the Town of Champlain.”
Immediately following that paragraph and on page 3-PB-5 was the following:
"Town of Champlain, N. Y. Clinton County, New York
"Under this contract the Contractor agrees to expend at least Ten Thousand Eight Hundred Dollars, ($10,800.00), for bona fide minority business enterprises in accordance with paragraph 61 of the 'General Condition’.
"List below, (and on added sheets if required), the minority business enterprises participating in this contract and the dollar amount of their involvement.
*323 "1__ Firm Name Address Scope of Work Amount "2__ Firm Name Address Scope of Work Amount ''
The petitioner, within the time specified by the bid document, submitted a bid which was one of three. Its bid was the lowest, being approximately $13,000 less than the next lowest bid. Sometime after the opening, the Town of Champlain rejected petitioner’s bid as being incomplete. It claimed that the bid was incomplete because page 3-PB-5 had not been filled out listing the name and address of the minority subcontractor, the nature of the work to be performed by it and the amount of money to be paid to it.
Prior to submission of its bid, petitioner had contacted the CMG Construction Company of Hogansburg, New York, an approved minority contractor and said contractor had agreed to perform certain portions of the general contract for a sum of money in excess of the 10% required by general condition No. 61 previously referred to. Petitioner did not complete page 3-PB-5 because page 3-PB-4 only required that the information necessary to complete page 3-PB-5 be supplied within five days following notification that it was the apparent lowest bidder. It is conceded that the petitioner is a responsible bidder, that its bid was the lowest and that were it not for what the town determined to be an incomplete bid, the contract would have been awarded to the petitioner.
The respondent Town of Champlain, after rejecting petitioner’s bid, notified all concerned that it would award the con *324 tract to the respondent Tracy-Trombley Construction Co., Inc. Within five days after the opening of the bids, petitioner gave the Town of Champlain all the information required by pages 3-PB-4 and 3-PB-5 and general condition paragraph 61 of the bid document. It was provided to the town in letter form because the town refused to provide petitioner with form ED-530 specified on page 3-PB-4.
Resolution of the controversy requires judicial construction of the language of the bid documents. It is hornbook law that where the language of a contract is unambiguous and the words are plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation, for eifect must be given to the intent as indicated by the language itself. Where the court finds as a matter of law that a contract is unambiguous, evidence of the intention and acts of the parties other than exists in the contract itself plays no part in the decision. (10 NY Jur, Contracts, § 189.) The same principles apply to written communications in an invitation to bid and in the bid itself.
The court has read the bid document thoroughly and has found no language requiring the bidder to identify the minority subcontractor until after being advised that he is the apparent lowest responsive bidder. The instructions on page 3-PB-4 are clear and unequivocal. They are consistent with the last paragraph of general condition No. 61. The apparent purpose of page 3-PB-5 was to alert the bidder as to the form he would be required to complete in the event it was determined that he was the successful bidder.
All respondents contend that page 2-1B-1 required that the bid form be fully completed. In their oral argument, they contended that all blank spaces were required to be filled in. However, that language in the instructions applied specifically to bid prices but not to all blank spaces. One needs only to read page 3-PB-8 to understand that all blanks need not be filled. Page 3-PB-8 contained instructions as to how page 3-PB-7 had to be filled out. By the same token, page 3-PB-5 instructed the bidder as to how the requirement of page 3-PB-4 would be met. Petitioner’s bid was fully completed.
The respondent Tracy-Trombley contended that the bid of petitioner was incomplete because it did not bind the petitioner to subcontract with a minority contractor. That contention is without merit because petitioner did obligate itself *325 to comply with each and every general condition, including No. 61.
 It is the opinion of the court that the interpretation of the bid document made by the Town of Champlain was in error and that its rejection of petitioner’s bid was illegal. The court’s interpretation is in accordance with unequivocal language of the bid document and consistent with the purpose of the Federal Government’s funding and the law of the State of New York. Municipal contracts are to be so construed as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of municipalities and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost. (General Municipal Law, § 100-a.)
Submit judgment granting petitioner its demanded relief.