The **AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**NAMROD DEVELOPMENT CORP., Evans Container Corp., Evans Development Corp. of New Jersey, Louis Evangelista, Peter Evangelista, Lucy Evangelista, and Maria Evangelista, Defendants.**

**No. 91 Civ. 1609 (RLC).**

United States District Court, S.D. New York.

April 9, 1992.

Lambert & Weiss, New York City, for plaintiff; Monroe Weiss, Richard Isgard, of counsel.

Slatt & Lane, New York City, for defendants; Shephard Lane, Abner P. Slatt, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Aetna Casualty and Surety Company ("Aetna") brings this diversity action to enforce certain guarantees executed by the defendants Namrod Development Corp., Evans Container Corp., Evans Development Corp. of New Jersey, Louis Evangelista, Peter Evangelista, Lucy Evangelista and Maria Evangelista. Defendants have answered and asserted a counterclaim for injuries sustained by Namrod Development Corp. Plaintiff has moved, under Rule 56, F.R.Civ.P., for summary judgment on the issue of defendants' liability, for summary judgment on the counterclaim, and for sanctions under Rule 11, F.R.Civ.P. Defendants have moved, under 11 U.S.C. § 362 (1991), for this action to be stayed as one that threatens to bind the estate of a bankrupt debtor, and under Rule 19, F.R.Civ.P., for dismissal for failure to join an indispensable party.

## FACTS

On June 1, 1982, the board of directors of Namrod Construction Company, Incorporated ("Namrod")[1] held its first meeting. The board consisted of defendants Louis Evangelista and Peter Evangelista ("the Evangelistas"). At that meeting, Louis Evangelista was elected President of Namrod, Peter Evangelista was elected Vice-President, Treasurer and Secretary, and all of the corporation's stock was tendered to the Evangelistas. It was also resolved that "if any of the Corporation's principals, or affiliated companies or third parties agree to guarantee the Corporation's obligations to surety companies or bonding companies," Namrod would indemnify them if they were called upon to perform on the guarantees. Louis and Peter Evangelista remain President and Vice-President of Namrod respectively and its controlling shareholders.

Beginning in 1983, Namrod entered into contracts with various New York City and metropolitan agencies to complete several construction projects in the Bronx. In conjunction with these projects, plaintiff, as surety, issued performance and payment bonds with Namrod as the principal and the agencies as the obligees. In connection with the performance and payment bonds, all of the defendants, and Namrod, executed a "General Agreement of Indemnity and Security" and a "General Contract of Indemnity" in which they agreed jointly and severally to indemnify plaintiff for any losses as a result of the furnishing of the bonds.

By early 1990, Namrod was having difficulty completing its construction projects and paying its materialmen. In May of that year, Namrod defaulted on the construction projects. In September, Namrod advised the plaintiff that it needed $2 million to complete the projects. Plaintiff chose not to advance the funds to Namrod, and instead arranged for the work to continue through other construction companies. The parties disagree about the circumstances leading up to Aetna's decision to continue without Namrod. Defendants contend that plaintiff reneged on an agreement to use Namrod and chose other contractors, knowing that the projects would be finished at a greater expense than using Namrod. Plaintiff denies all these contentions.

In October, 1990, Namrod filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York ("the bankruptcy court"). Plaintiff

---

1. Namrod Construction Corp., Inc. ("Namrod") should be distinguished from defendant Namrod Development Corp.

subsequently brought suit against the defendants on the indemnity agreements to recover the expenses of completing the construction projects.

## DISCUSSION

I. *Motion for Stay Under 11 U.S.C. § 362.*

■ Defendants move that this action be stayed pursuant to the bankruptcy code's "automatic stay" provision, 11 U.S.C. § 362 (1991), which provides that any action commenced against a bankrupt debtor or the property of the bankruptcy estate must be stayed.[2] This action is not brought directly against Namrod or its property, but rather against guarantors of Namrod's performance bonds. However, defendants contend that since Namrod is obligated to indemnify them for performance of their guaranteed obligations, a judgment against defendants will require Namrod to indemnify them and thus bind the bankrupt debtor. Plaintiff counters, arguing that the automatic stay only applies to actions brought against Namrod, and may not be extended to nonbankrupt defendants.

Plaintiff has stated the usual rule governing the applicability of section 362: nonbankrupt codebtors do not benefit from a bankruptcy stay. *See Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 65 (2d Cir.1986); *In re Johns–Manville Corp.*, 26 B.R. 405 (Bankr. S.D.N.Y.1983). However, in *In re Lomas Financial Corp.*, 117 B.R. 64 (S.D.N.Y. 1990) (Leisure, J.), the court held that an indemnification obligation running from the bankrupt debtor to codebtors can be an unusual circumstance creating an exception to the normal rule. *Lomas* involved a suit against two officers of a bankrupt corpora-

tion for alleged misrepresentations that induced the *Lomas* plaintiff to extend loans to the corporation before it filed for bankruptcy. The suit sought to recover from the officers. The officers had not personally guaranteed the loans, but the corporation's charter had an indemnification clause obligating the corporation to indemnify them. *See* 117 B.R. at 65, 68.

The court, relying on *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir.), *cert. denied* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), held that the presence of the indemnification clause would justify staying the action. The court adopted *Robins'* holding that a stay is available in an action instituted against a nonbankrupt codebtor when:

> there is such identity between the debtor and the [codebtor] that the debtor may be said to be the real party defendant and that a judgment against the [codebtor] will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third party who is entitled to absolute indemnity by the debtor or on account of any judgment that might result against them in the case.

117 B.R. at 68 (quoting *Robins*, 788 F.2d at 999). The court also noted that the suit against the two officers would substantially impede the corporation's reorganization efforts by forcing the officers to devote extensive time to defending the suit. *See* 117 B.R. at 67.

However, *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31 (1991) (Motley, J.), expressed a narrower view of the *Robins* holding. *CAE* involved a suit against a former officer of a bankrupt corporation, who was to be indemnified by the corporation. A creditor of the corporation sued

---

**2.** Section 362(a) reads:

[A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor ...;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

the officer in tort, based on actions taken by the officer before and after he resigned from the corporation. *See id.* at 31–33. While acknowledging that indemnification agreements can be the basis for the extension of a stay to nondebtors, the court held that such an extension is not warranted where the nondebtor is " 'independently liable' " to the creditor. *See id.* at 33 (quoting *Robins,* 788 F.2d at 999). The court noted that in *CAE,* the officer was being sued based upon actions taken in his individual capacity, some of which occurred after his resignation, and that continuation of the suit would not unduly burden the debtor's reorganization efforts. Therefore the court held that the suit against the officer was sufficiently independent of the debtor and the debtor's reorganization efforts to justify denial of the request for a stay. *See id.* at 33–34.

*In re North Star Contracting Corp.,* 125 B.R. 368 (S.D.N.Y.1991) (Broderick, J.), involved another suit against an officer of a bankrupt corporation. There, a suit was brought against a corporate president, alleging that the president had made misrepresentations in dealing with a creditor of the corporation. The corporation was obligated to indemnify its president for any action taken in his capacity as president. Applying *Lomas,* the court held that the existence of the indemnity obligation justified staying the action. *See id.* at 369–71. The court distinguished *CAE,* partly on the basis that there was not a "bonafide separate cause of action" against the president, and that the president was sued merely to circumvent the automatic stay. *See id.* at 371. The court also noted that, unlike the situation presented in *CAE,* defending the suit would distract the president from his corporate reorganization duties. *See id.*

The present case is more analogous to the situation presented in *CAE* than to *Lomas* or *North Star.* The actions in *Lomas* and *North Star* did not involve individual guarantees and represented transparent attempts to sue corporate officers for acts done by the officers as representatives of the corporation. In this case, the Evangelistas are " 'independently liable' " to plaintiff, *CAE,* 116 B.R. at 33 (quoting *Robins,* 788 F.2d at 999), separate from any claims that plaintiff may have against Namrod. Although the Evangelistas are officers of Namrod, the action against them is not based upon any acts committed in their capacity as Namrod's officers, but results from their personal guarantees. The very purpose of having defendants personally guaranty the payment and performance bonds was to provide an alternate avenue of recovery in case payment from Namrod was not forthcoming. Thus, staying this action "would work a hardship on plaintiff[ ], by giving an unwarranted immunity from suit to solvent [codebtors], which would contravene the purposes underlying the automatic stay." *CAE, supra,* 116 B.R. at 32 (citation omitted).

Moreover, it does not appear that proceeding with this action will distract the Evangelistas from the company's reorganization effort, since it will result in plaintiff's summary judgment motion being granted as to liability and thus the amount of time the Evangelistas need devote to this action will be greatly reduced. Accordingly, the motion for a stay pursuant to 11 U.S.C. § 362 is denied.

II. *Motion to Dismiss for Failure to Join an Indispensable Party.*

Defendants alternately move for dismissal under Rule 19, F.R.Civ.P., for failure to join an indispensable party, Namrod. Rule 19 governs the inquiry the court must conduct to decide whether Namrod is indispensable. *See generally Avon Cosmetics (FEBO) Ltd. v. New Hampton, Inc.,* No. 90 Civ. 7208 (RLC), 1991 WL 90808 (S.D.N.Y. May 22, 1991) (Carter, J.). Our inquiry is to determine whether Namrod is a party to be joined "if feasible" under Rule 19(a) because:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the per-

sons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Rule 19(a), R.F.Civ.P.[3]

### A.

■ Defendants' first argument that Namrod is a party to be joined if feasible under Rule 19(a) is that they cannot conduct their defense or assert their counterclaim adequately without Namrod's joinder. Defendants assert that therefore, they cannot be accorded adequate relief unless Namrod is joined. This argument must be rejected. Defendants Louis and Peter Evangelista admit that they are Namrod's controlling shareholders, its President and Vice–President respectively and at least as of 1982, constituted its board of directors and owned all its stock. They have alleged no facts to buttress their assertion that somehow they need Namrod's joinder to conduct their defense. Evidence of such facts, if it existed, would undoubtedly be in their possession. It appears doubtful that Namrod's joinder will result in any arguments being raised in the defense that have not already been raised by the present parties. *Cf. National Union Fire Ins. Co. v. Mason, Perrin & Kanovsky,* 709 F.Supp. 411, 414 (S.D.N.Y.1989) (Sweet, J.) (holding that if present defendants will raise all arguments that absent parties would raise, absent parties' interests are adequately represented.). Defendants' contention that their defense is impaired must be rejected.

**3.** Even if Namrod is a party to be joined if feasible under Rule 19(a), Namrod may not be joined because of the automatic stay provision of the bankruptcy code. If the requirements of Rule 19(a) are satisfied, the court must make an additional inquiry and, under Rule 19(b), "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party thus regarded as indispensable." Rule 19(b), F.R.Civ.P. However, as indicated in the text below, defendants fail to make the showing necessary to satisfy the requirements of Rule 19(a).

**4.** Defendants also argue that this action should be dismissed under Rule 19 because a decision

### B.

■ Defendants also contend that Namrod should be joined if feasible under Rule 19(a)(2)(i) to protect its interests. Defendants assert that a judgment in this action will collaterally estop Namrod in its bankruptcy proceeding, and thus that Namrod's joinder is necessary to avoid prejudicing Namrod's interests. However, the rule mandates that the court examine whether disposition of this action will *"as a practical matter* impair or impede [Namrod's] ability to protect [its] interest." Rule 19(a)(2)(i), F.R.Civ.P. (emphasis added). Since it appears that defendants Louis and Peter Evangelista will assert any defense or raise any argument that Namrod would have asserted or raised if it had been present, Namrod's interests are adequately represented and its joinder is not necessary. *See National Union, supra,* 709 F.Supp. at 414.[4]

### C.

■ Defendants also contend, somewhat summarily, that Namrod's absence will expose them to the possibility of inconsistent judgments. Defendants claim that this action and Namrod's bankruptcy proceeding may reach inconsistent results. For instance, in this action the court might hold that defendants' guarantees are valid, reject their defenses and hold for plaintiff, while the bankruptcy court might subsequently hold that the guarantees are invalid and on this basis decide that Namrod has no obligation to indemnify the defendants. Defendants would be subject to inconsistent judgments.

in this action might establish a "negative precedent" that would be binding on Namrod, citing *Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305 (5th Cir.1986). By "negative precedent" the Fifth Circuit referred to the degree of deference that Louisiana state courts would give to a decision of that court, since res judicata and collateral estoppel have limited applicability under Louisiana law. However, collateral estoppel is available in the bankruptcy court, hence *Pulitzer–Polster's* holding is inapplicable to this case. Moreover, even if such a "negative precedent" could be established, since defendants adequately represent Namrod's interest, Namrod's joinder is not necessary.

Such a possibility does exist but it appears to be remote. Two of the defendants are Namrod's principal officers and controlling shareholders, and, at least as of 1982, constituted its board of directors and owned all its stock. While it is unclear whether the 1982 relationship persists, it appears unlikely that Namrod will refuse to indemnify defendants and choose to litigate the matter instead. Defendants have · pointed to no facts that demonstrate that such an action is likely to be taken by Namrod. While there remains a theoretical possibility that Namrod might litigate the issue of its indemnification obligation with defendants, on the basis of defendants' showing, that possibility remains only theoretical. It does not seem that defendants are subject to a *"substantial* risk of incurring ... inconsistent obligations."* Rule 19(a), F.R.Civ.P. (emphasis added); *see also Morgan Guaranty Trust Co. v. Martin,* 466 F.2d 593, 598 (7th Cir. 1972).

Moreover, even assuming defendants clear the hurdle of Rule 19(a), they would have difficulty showing that a judgment in this action would be "prejudicial" to them under the Rule 19(b) analysis.[5] *See* 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1608, at 100–01 (1986) ("[C]ourts must look to the practical likelihood of prejudice and subsequent litigation, rather than the theoretical possibility that they may occur."). Therefore defendants' motion to dismiss this action under Rule 19 must be denied.

### III. *Plaintiff's Motion for Summary Judgment*

#### A.

■ Plaintiff has moved for summary judgment on defendants' liability and counterclaims. On the liability issue, defendants do not dispute the validity of the guarantees or of the underlying payment and performance bonds. Defendants acknowledge that Namrod has defaulted on the construction projects and that their liability is established but for one defense. Defendants assert that plaintiff breached the contract established by the bonds and the guarantees by engaging in "bad faith" dealings with Namrod "calculated to eliminate Namrod from the [construction] Contract." Affidavit of Louis Evangelista in Opposition to Plaintiff's Motion for Summary Judgment at 7. Defendants assert that plaintiff entered into negotiations about the possibility of financing Namrod so that Namrod might finish the contracts itself, but that plaintiff spurned all reasonable offers of financing arrangements and engaged contractors that it knew would be more expensive than engaging Namrod.

■ Under New York law, a contract can be breached if one party intentionally makes performance by the other party impossible. *See, e.g., Greenspan v. Amsterdam,* 145 A.D.2d 535, 536 N.Y.S.2d 90 (2d Dept.1988); *Bass v. Sevits,* 78 A.D.2d 926, 433 N.Y.S.2d 245 (3d Dept.1980). However, defendants admit that in this case Namrod's financial difficulties were brought about by "the economy and other events (unrelated to the Bad Faith conduct of Aetna)." Affidavit of Louis Evangelista in Opposition to Plaintiff's Motion for Summary Judgment at 4. Therefore, plaintiff's "bad faith" act was merely to refuse to rescue Namrod from financial difficulties brought about by factors wholly independent of any action taken by plaintiff. Absent some express or implied contractual duty to provide financing for Namrod, plaintiff's actions cannot constitute a breach of the contract embodied in the guarantees and the payment and performance bonds.

It appears that no such duty exists. The guarantees unambiguously permit plaintiff

---

**5.** Rule 19(b) lists four factors for a court to consider when deciding whether a party is indispensable: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Rule 19(b), F.R.Civ.P.

to refuse financing for Namrod. They provide that in the event of a default by Namrod, "[s]urety is authorized at its option to take over or arrange completion of any Contract *by any means it deems appropriate.*" Exhibit 5, Affidavit of Stephen Kinzer (emphasis added). By its terms the agreement clearly authorizes plaintiff to choose the method of completion of the construction projects that it deems most appropriate. In addition, the agreement envisioned that, upon default, plaintiff would take over the projects itself, and gave plaintiff the power to exercise Namrod's rights and titles in project equipment, materials and subcontracts. *See id.* These provisions are hardly consistent with a requirement that plaintiff finance Namrod.[6]

Under New York law, when "the language of a contract is unambiguous and the words are plain and clear ... effect must be given to the intent as indicated in the language itself." *Noel J. Brunell & Son, Inc. v. Town of Champlain,* 95 Misc.2d 320, 324, 407 N.Y.S.2d 376, 379 (Sup.Ct.1977), *aff'd* 64 A.D.2d 757, 407 N.Y.S.2d 447 (3d Dept.1978); *Accord Western Union Tel. Co. v. American Communications Ass'n,* 299 N.Y. 177, 184, 86 N.E.2d 162 (1949). The contract embodied in the guarantees and the payment and performance bonds unambiguously left plaintiff the option to refuse to finance Namrod. Therefore plaintiff did not engage in bad faith conduct and the court must grant summary judgment in favor of plaintiff on the issue of liability.

### B.

■ Plaintiff also moves for summary judgment on defendants' counterclaim. The counterclaim alleges that Namrod and plaintiff did in fact enter into an oral agreement to provide financing, and that plaintiff breached this agreement by using other contractors to complete the projects.

Since plaintiff did not finance Namrod, defendants assert that the value of Namrod's bankruptcy estate has decreased and that therefore less funds are available for distribution to Louis and Peter Evangelista as Namrod's shareholders.

■ Defendants' counterclaim runs afoul of the rule that a shareholder of a corporation may not normally bring an action for diminution of the value of corporate stock. Such a cause of action is regarded as belonging to the corporate entity rather than to the individual shareholder because while the corporation is directly injured, the individual is harmed only indirectly. *See Vincel v. White Motor Corp.,* 521 F.2d 1113 (2d Cir.1975); *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.,* 521 F.Supp. 1046 (S.D.N.Y.1981) (Sweet, J.); *Abrams v. Donati,* 108 A.D.2d 704, 485 N.Y.S.2d 1012 (1st Dept.), *appeal dismissed without opinion* 65 N.Y.2d 784, *aff'd* 66 N.Y.2d 951, 498 N.Y.S.2d 782, 489 N.E.2d 751 (1985). Although there is an exception to this rule where an independent duty, contractual or otherwise, is owed to the shareholder, *see Vincel, supra,* 521 F.2d at 1118, defendants' allegations disclose no such duty. Defendants merely allege that plaintiff negotiated with Namrod and breached its contractual duty to Namrod, making no allegation of a separate duty owed to them. Louis and Peter Evangelista's status as Namrod's controlling shareholders does not change the normal rule. *See Saxe, Bacon & Bolan, supra,* 521 F.Supp. at 1048. Therefore defendants' counterclaim is dismissed.

### C.

■ The only issue that remains to be resolved concerns plaintiff's damages. Defendants oppose plaintiff's damage claim under Rule 56(f), F.R.Civ.P., asking for

---

**6.** In addition, performance bonds are usually construed to give a surety such as plaintiff a number of choices upon a principal's default, including the option to refuse financing for the principal. *See Granite Computer Leasing Corp. v. Travelers Indemnity Co.,* 894 F.2d 547, 551 (2d Cir.1990); *Aetna Casualty & Surety Co. v. United States,* 845 F.2d 971, 975 (Fed.Cir.1988); *United*

*States v. Seaboard Surety Co.,* 817 F.2d 956, 959 (2d Cir.), *cert. denied* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987). Similarly, payment bonds are usually construed to require that the surety make payments directly to the unpaid subcontractors, materialmen and laborers, rather than to the defaulted principal. *See Aetna, supra,* 845 F.2d at 973.

more time to conduct discovery concerning possible overstated damages. Plaintiff claims $6,850,580.53 for funds expended in completing the construction projects. Defendants contend that they lack sufficient information to oppose this damage claim adequately, and assert that at least in part, the claim represents payments to subcontractors that are duplications of payments made by Namrod to the same subcontractors. Defendants request time to conduct discovery of plaintiff and third parties, presumably the relevant subcontractors.

■ There is merit to defendants' request for additional time. The last pleading in this matter was filed on July 31, 1991, and plaintiff's summary judgment motion was filed sixteen days later, on August 16. Defendants' opposition was filed on October 30. Defendants had little opportunity for discovery to oppose plaintiff's damage claims. The court has previously stated that "where there has been no discovery ... even if summary judgment might be granted, the better course is to deny the motion without prejudice to renewing it after further discovery is completed." *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 936 (S.D.N.Y. 1983) (Goettel, J.); *Accord Argus, Inc. v. Eastman Kodak Co.*, 552 F.Supp. 589, 600 (S.D.N.Y.1982) (Gagliardi, J.). Since there has been little opportunity for discovery to substantiate defendants' contentions regarding damages, summary judgment will be denied as to damages and plaintiff may renew its motion when adequate discovery has been conducted.[7]

### CONCLUSION

Accordingly, defendants' motions for a stay under 11 U.S.C. § 362 and for dismissal under Rule 19, F.R.Civ.P., are denied. Plaintiff's motion for summary judgment under Rule 56, F.R.Civ.P., is granted as to liability and denied as to damages. Plain-

tiff's motion for summary judgment on defendants' counterclaim is granted. Plaintiff's motion for sanctions under Rule 11, F.R.Civ.P., is denied.

IT IS SO ORDERED.

---

7. Defendants also request additional time under Rule 56(f) to develop facts adequately in support their bad faith defense to plaintiff's summary judgment motion and to develop facts in support their counterclaim. However, this request must be denied since, as indicated in the discussion above, defendants' theories on these

two issues are legally insufficient to defeat plaintiff's claims.

While these theories were legally insufficient, their insufficiency does not rise to the level of sanctionable conduct; therefore plaintiff's motion for sanctions under Rule 11, F.R.Civ.P., will also be denied.