**CHICAGO TITLE INS. CO., a Nebraska corporation, Plaintiff,**

v.

**Michael LERNER, et al., Defendants.**

**No. 10–60329–CIV.**

United States District Court, S.D. Florida.

June 30, 2010.

734

Christopher W. Smart, Gwynne Alice Young, Kathryn Harrigan Christian, Carlton Fields, Tampa, FL, for Plaintiff.

Steven Sloane Newburgh, Cohen, Norris, Scherer, Weinberger & Womer, North Palm Beach, FL, for Defendants.

## *ORDER*

PAUL C. HUCK, District Judge.

This matter is before the Court on Defendants' Motion to Abate Pending Disposition of Lien Claims in State Court [D.E. # 18], requesting that this action by Chicago Title Insurance Company, a title insurer, to recover on Defendants' personal undertaking be stayed (1) pursuant to an automatic stay entered in a related bankruptcy proceeding, or (2) pending disposition of state court litigation regarding claims involving real property. For the following reasons, the Motion is denied.

## *FACTS*

Defendants are real estate developers and were managers of the real estate development company MCZ/Centrum Florida Owner VI, L.L.C. MCZ was the owner and developer of the Crown Plaza Hollywood Sian Resort located in Hollywood, Florida. In August 2007, while the property was still being renovated, MCZ sold the property to MHI/Carlyle Sian Owner I, L.L.C. As part of its contract, MCZ gave an indemnity to MHI for matters, including lien claims, arising prior to the closing date. Plaintiff Chicago Title Insurance Company issued policies in connection with this transaction which insured that the property's title was clear. Concurrently, the Defendants, in their individual capacities, executed a personal undertaking jointly and severally covenanting to defend and save Plaintiff harmless from any and all loss, cost, damages, attorneys' fees and expenses arising from (1) any "lien or right to a lien, for service, labor or material," and (2) "claims by purchasers who have previously entered into purchase agreements" with MCZ to purchase condominium units at the Crown Plaza. Defendants further agreed to "pay, discharge satisfy or remove all or any" of the items referenced in the personal undertaking within ten days of a written demand.

Shortly after the property sale, several of MCZ's trade creditors recorded claims of lien against property and subsequently brought foreclosure suits, and one of the purchasers of a condominium unit filed a lawsuit seeking specific performance of her purchase contract. These actions were filed in state court. MCZ had assumed the defense of these actions on behalf of MHI, but ceased doing so once MCZ's successor-in-interest filed for bankruptcy on August 28, 2009, at which time MHI demanded that Plaintiff assume defense of the actions.

On February 10, 2010, Plaintiff demanded, pursuant to the personal undertaking, that Defendants (1) pay, discharge, satisfy or remove each of the liens asserted in the lien foreclosure actions, (2) settle or pay the purchaser's claim in the specific performance action, and (3) compensate Plaintiff for all attorneys' fees and costs it has and will incur in defending the actions. Upon Defendants' failure to comply with this demand, Plaintiff brought the instant action.

By their Motion, the Defendants seek to abate this matter pending disposition of the underlying actions in state court. Defendants contend that the underlying claims lack merit. Defendants argue that they should not be subject to liability pursuant to the personal undertaking until the state courts adjudicate the underlying actions—and thus conclusively establish liability. Defendants additionally contend that the automatic stay operating in the bankruptcy proceeding of MCZ's successor applies to preclude or delay the present action.

### LEGAL ANALYSIS

This matter presents three legal issues: (1) which courts have jurisdiction to determine the applicability of the automatic stay, (2) whether the automatic stay should be extended to bar litigation against non-debtor guarantors of a debtor's pre-petition obligations where those guarantors are, by contract, to be indemnified by the debtor for any outlays, and (3) whether the guaranty is to be enforced without precondition—that is, irrespective of the pendency of underlying litigation within state court.

### A. The Automatic Stay

■ Section 362(a)(1) of the Bankruptcy Code provides that the filing of a petition in bankruptcy operates as a stay against all entities in any litigation against the debtor on a pre-petition claim. Federal district courts have jurisdiction concurrent with the originating bankruptcy court to determine the applicability of the bankruptcy court's automatic stay. *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp. Litig.),* 765 F.2d 343, 347 (2d Cir.1985) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court ... is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court supervising the reorganization."). Thus, as an initial matter, this Court possesses the power to determine the applicability of the automatic stay.

■ "Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor.'" *McCartney v. Integra Nat'l Bank North,* 106 F.3d 506, 509 (3d Cir. 1997). The Fourth Circuit has noted that in "unusual circumstances," the automatic stay may be extended to enjoin litigation against non-bankrupt co-defendants of the debtor. *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986). The Fourth Circuit gave as an "illustration" of such an unusual circumstance the surprisingly typical situation of a creditor who has lodged "suit against a third-party [guarantor of a debtor's obligation] who is entitled to absolute indemnity by the debtor on account of any judgment that might result." *Id.* Numerous courts have concurred. *See, e.g., In re Eagle–Picher Industries, Inc.,* 963 F.2d 855 (6th Cir.1992); *In re W.R. Grace & Co.,* No. 01–01139(JFK), 2004 WL 954772, *2 (Bankr. D.Del. April 29, 2004); *In re United Health Care Org.,* 210 B.R. 228, 232 (S.D.N.Y.1997). In the instant matter, the Defendants have suggested that they possess rights of indemnification against the

debtor for any funds outlaid under the personal guaranty and undertaking and thus, under *A.H. Robins*, the action against them must be stayed.

The *A.H. Robins* extension of the stay to a non-debtor is perhaps somewhat palatable when one is mindful that the automatic stay acts merely to postpone, rather than forever preclude, enforcement of the guaranty. Nonetheless, there are certain circumstances where postponement itself is an injustice, such as where a party specifically bargains for the concession of a personal guaranty so as to ensure *timely* payment of a debt, or, as in this case, clear title to real property. In that case, the guarantor will have induced the creditor to extend credit or purchase that property on the basis of an express promise that its debt would be paid or title cleared without delay irrespective of the debtor's ability to do so. The creditor will have detrimentally relied on such express assurance, offering the debtor more favorable terms than it otherwise would have in the absence of a guaranty or, as in this case, close on the purchase of the property. Some courts, apparently moved by similar considerations, have rejected or sought to distinguish *A.H. Robins*. For instance, one court declined to apply the automatic stay to bar litigation against defendants who had rights of indemnity against the debtor, where the guarantee rendered them liable for only $23,434.67, and their indemnification claim would likely be treated as any other pre-petition, unsecured claim against the debtor. *All Seasons Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*, 79 B.R. 901 (Bankr.C.D.Cal.1987). Another court noted that "unusual circumstances" did not exist where, under the debtor's plan of reorganization, the non-debtor defendants' indemnity claims would receive no distribution from the debtor. *In re Sunbeam Sec. Litig.*, 261 B.R. 534 (S.D.Fla.2001). This Court also questions

the wisdom of the *A.H. Robins* illustration, which, as both dicta and an out-of-circuit pronouncement, is not binding here. *See Algemene Bank Nederland, N.V. v. Hallwood Industries, Inc.*, 133 B.R. 176, 180 n. 3 (W.D.Pa.1991) ("I specifically reject the dictum stated by the [Fourth] Circuit in *A.H. Robins Co.*, 788 F.2d at 999–1000, holding a stay permissible ... based solely on the existence of an indemnification agreement.").

■ The Court finds persuasive *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y.1992), which refused to extend the automatic stay to bar litigation against guarantors possessing rights of indemnity from the debtor because it was not a "transparent attempt[ ] to sue corporate officers for acts done by the officers as representatives of the corporation," but instead "result[ed] from their personal guarantees." The court added that "[t]he very purpose of having defendants personally guarantee the ... bonds was to provide an alternative avenue of recovery in case payment from the [debtor] was not forthcoming." *Id.* The same principle should be applied here. Where suit is an attempt to enforce a personal guaranty which was obtained for consideration, particularly one which induced a creditor to extend liquidity, more favorable loan terms, or, as in this case, the commitment to ensure clear title, and it does not appear that suit is merely a veiled attempt to collect against the debtor or against the debtor's officers or directors for actions taken solely in their official capacities, the automatic stay should not be extended to preclude or delay the action.

Moreover, even if the automatic stay could extend to shield non-debtor guarantors under the present circumstances, the Defendants have not shown any adverse effect enforcement of the guaranty against

defendants would have on the debtor or its bankruptcy proceeding. In fact, it appears that enforcing the guaranty would only replace one creditor with another, and there is no evidence that the substituted creditor would have a claim senior in priority to the replaced creditor. Nor is it shown that the debtor, or other creditors, would have any objection to the continuation of this litigation. In this regard, one court has gone so far as to hold that only the debtor can request extension of the automatic stay to non-debtors. *See All Seasons Resorts*, 79 B.R. at 904 ("[T]he automatic stay does not *automatically* encompass co-defendants. A court must make that determination upon request of the debtor."). Striking a more moderate tone, Judge Donald Middlebrooks of this district—without deciding whether a non-debtor could itself move for extension of the automatic stay—refused to apply the automatic stay in a suit against non-debtor defendants possessing rights to indemnification by the debtor where, *inter alia*, the debtor took no position on the issue, did not seek a stay for the non-debtor defendants, and had not sought "injunctive relief in Bankruptcy Court based on the anticipated effect upon reorganization from its indemnification obligations to the individual defendants." *In re Sunbeam Sec. Litig.*, 261 B.R. at 537.

 In its discussion of the district court's concurrent jurisdiction, the Second Circuit, sensitive to these issues, noted that the district court is not required to exercise its concurrent jurisdiction; the decision whether to do so is a matter left to the district court's discretion. *Erti*, 765 F.2d at 347 ("Whether it ought to exercise its authority to make such a determination, however, is a different question."). In

making its decision, the district court should be mindful that exercising concurrent jurisdiction may inhibit the bankruptcy court's authority and equitable powers to assure the orderly conduct of the reorganization process and prevent the bankruptcy court from construing its own stay. In many cases, harmony, fairness, and efficiency are "best achieved by centralizing construction of the automatic stay in the Bankruptcy Court." *Id.* at 349. The Court agrees. The question whether to extend the automatic stay to the present action is one that is, in these circumstances, most appropriately considered by the bankruptcy court overseeing the MCZ successor's bankruptcy proceedings, and the Court will defer to its judgment on the matter. Absent an order from the bankruptcy court extending the stay, this action shall proceed.[1]

## B. Pendency of the Underlying Suits

 The common law of contracts recognizes the distinction between a guaranty of payment and a guaranty of collection. "[A] a guaranty of payment is an obligation to pay the debt when due if the debtor does not. A guarantor of payment is primarily liable and waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty." *Ford v. Darwin*, 767 S.W.2d 851, 854 (Tex. App.1989) (internal citation omitted). A guaranty of collection "is one under which the creditor can seek performance from the guarantor only after the occurrence of some condition such as the condition that the creditor has unsuccessfully and with reasonable diligence sought to collect the debt from the principal debtor." *United*

---

1. Such a ruling appears unlikely, as the bankruptcy court has issued an order indicating that it intends to dismiss MCZ's successors' chapter 11 case. *See In re: FLA Owner VI, Inc.*, Case No. 09 B 31877(JPC) (Bankr. N.D. Ill. June 22, 2010).

*States v. Vahlco Corp.*, 800 F.2d 462, 466 (5th Cir.1986).

■ According to the personal undertaking, where Defendants have refused to "pay, discharge, satisfy or remove from the title to said real estate all or any of the items set out" therein, the Plaintiff has "the right ... when it shall deem necessary, expedient, desirable or of interest to do so, in its sole discretion." The personal undertaking also provides that the Defendants "covenant[ ] and agree[ ] to pay to the [Plaintiff] all amounts so expended on demand." The combination of provisions granting the Plaintiff sole discretion to take action under its insurance agreement and requiring payment from the Defendants "on demand," and the fact that Plaintiff's purpose in the sale transaction was to ensure clear title, rather than mere payment of money, lead to the conclusion that the personal undertaking is in the nature of a guaranty of payment, and not a guaranty of collection. As such, its terms must be enforced, and payment must be made on demand, without precondition. *See Nat'l Bank of Detroit v. United States*, 1 Cl.Ct. 712, 715 (Cl.Ct.1983) ("The court must conclude that the unconditional nature of defendant's obligation was a bargained-for term of the guaranty contract and constituted an inducement for the bank to make the loan.... A stay of proceedings would effectively change the terms of the bargain by precluding the [plaintiff] from proceeding on the guaranty independent of its action on the underlying loan."); *RepublicBank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120 (5th Cir.1987) (affirming district court's refusal to stay action on guaranty pending outcome of state court action against primary debtor).

■ This, however, does not end the matter, for there is still the question of what actually may be demanded of the Defendants at this point in time. The Defendants contend that, as the underlying suits have not concluded, the amount of liability (if any) has not been precisely established.[2] Pursuant to the personal undertaking, Plaintiff has a claim against the Defendants for sums necessarily and reasonably expended to clear title and dispose of the specific performance action. While the sum to which Plaintiff may be entitled to recover from Defendants is not yet determined, the Plaintiff and the Defendants will have the opportunity to make such a determination as this case unfolds. This case shall proceed on that basis.

### CONCLUSION

For the foregoing reasons, the Motion to Abate is DENIED.

DONE and ORDERED.

---

2. The Court notes that Defendants could have avoided the current predicament by bonding off the claims against the real property while they contested the validity of those claims.